IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ALYSSA H.,

                          Plaintiff,

        v.                                              Civil Action No.
                                                        3:20-cv-1506 (DEP)

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

                          Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LACHMAN GORTON LAW FIRM              PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.               CHRISTINE A. SAAD, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

_____

[1]      Plaintiff's complaint named Andrew M. Saul, in his official capacity as the
Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi
took office as the Acting Social Security Commissioner. She has therefore been
substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure, and no further action is required in order to effectuate
this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c), are cross-motions for judgment on the pleadings.[2] Oral argument was conducted in connection with those motions on July 13, 2022, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by

_____

[2]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

reference, it is hereby

ORDERED, as follows:

1)     Plaintiff's motion for judgment on the pleadings is GRANTED.

2)     The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)     The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)     The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:     July 18, 2022
           Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
ALYSSA H.,

                              Plaintiff,

vs.                               3:20-CV-1506

KILOLO KIJAKAZI, ACTING COMMISSIONER
OF SOCIAL SECURITY,


                              Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on July 13, 2022, the HONORABLE

DAVID E. PEEBLES, United States Magistrate Judge,

Presiding.

                  A P P E A R A N C E S

                    (By Telephone)

For Plaintiff:        LACHMAN GORTON LAW FIRM
                      Attorneys at Law
                      P.O. Box 89
                      1500 East Main Street
                      Endicott, New York  13761-0089
                        BY:  PETER A. GORTON, ESQ.


For Defendant:        SOCIAL SECURITY ADMINISTRATION
                      Office of General Counsel
                      J.F.K. Federal Building
                      Room 625
                      Boston, Massachusetts  02203
                        BY:  CHRISTINE A. SAAD, ESQ.


            *Jodi L. Hibbard, RPR, CSR, CRR*
          *Official United States Court Reporter*
                *100 South Clinton Street*
              *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1          (The Court and all counsel present by

2           telephone.)

3          THE COURT:  Let me begin by thanking both counsel

4  for excellent spirited presentations.

5          Plaintiff has commenced this action pursuant to 42

6  United States Code Sections 405(g) and 1383(c)(3) to

7  challenge an adverse determination by the Acting Commissioner

8  of Social Security finding that she was not disabled at the

9  relevant times and therefore ineligible for the Title XVI

10  benefits which she sought.

11          The background is as follows:  Plaintiff was born

12  in February of 1991 and is currently 31 years of age.  She

13  was 27 years old at the alleged onset of disability which is

14  actually the date of her application for benefits of

15  March 19, 2018.  Plaintiff stands 5 foot 1 inch in height and

16  has weighed between 117 and 130 pounds at various times.

17  Plaintiff lives in Johnson City with her mother, a son

18  together with the wife's son -- the wife's son's father, and

19  also with her sister.  Plaintiff is right-handed.  She

20  achieved a GED and attended regular classes while in school.

21  I note that the marital situation is fairly fuzzy, it's

22  unclear whether she and the son's father are married.  They

23  live apart but cohabitate when the son is with the father.

24  Plaintiff does not have a driver's license.  Plaintiff

25  stopped working in March of 2018 and actually, according to

1    page 31 of the administrative transcript, has not worked

2    since 2013.  When she did work, she worked as a part-time

3    cashier in a restaurant, as a janitor, and as a grocery store

4    produce worker.  According to page 231 of the administrative

5    transcript, she was fired from that position as a result of a

6    conflict with her boss.

7         Plaintiff does suffer from some relatively minor

8    physical impairments including tarsal tunnel syndrome, left

9    lower, for which she underwent release surgery in September

10   of 2018, fibromyalgia, and sleep apnea, although she does not

11   use a CPAP machine.

12        The issue really in this case surrounds her mental

13   condition.  She has at various times been diagnosed as

14   suffering from depressive disorder, panic disorder without

15   agoraphobia, bipolar disorder, and cannabis disorder.  In

16   March of 2017, she attempted suicide through overdose of

17   gabapentin and Klonopin and was hospitalized as a result of

18   that suicide attempt.  There were also indications of

19   physical confrontations with her mother at or about that

20   time.  Plaintiff has treated with various providers including

21   Endwell Family Physicians, Lourdes Primary Care, UHS

22   Rheumatology, Lourdes Center for Mental Health, UHS Mental

23   Health, and Family and Children's Society.

24        In terms of activities of daily living, plaintiff

25   does some cooking, child care, including dropping off and

1   picking up her son at the bus stop.  She plays with her son,

2   she cleans, watches television, listens to the radio.  She

3   can dress herself, she does not shop, instead relying on her

4   mother for that.

5          Procedurally, plaintiff applied for Title XVI

6   benefits on March 19, 2018.  On page 150, she claims

7   disability based upon fibromyalgia, anxiety, depression, and

8   sleep apnea.  A hearing was conducted on November 5, 2019 by

9   Administrative Law Judge Shawn Bozarth to address plaintiff's

10  application for benefits.  ALJ Bozarth issued an unfavorable

11  decision on November 15, 2019.  That became a final

12  determination of the agency on October 6, 2020 when the

13  Social Security Administration Appeals Council denied

14  plaintiff's request for review.  This action was commenced on

15  December 8, 2020, and is timely.

16         In his decision, ALJ Bozarth applied the familiar

17  five-step sequential test for determining disability.

18         At step one he determined that plaintiff had not

19  engaged in substantial gainful activity since the date of her

20  application.

21         At step two he found that plaintiff suffers from

22  severe impairments that impose more than minimal limitations

23  on her ability to perform basic work functions, and

24  specifically fibromyalgia, depressive disorder, panic

25  disorder, cannabis disorder, sleep apnea, tarsal tunnel

1    syndrome, and bipolar disorder.

2         At step three, ALJ Bozarth concluded that

3    plaintiff's conditions do not meet or medically equal any of

4    the listed presumptively disabling conditions set forth in

5    the Commissioner's regulations, specifically considering

6    Listings 1.02, 12.04, and 12.06, as well as Social Security

7    Ruling 12-2p which addresses fibromyalgia.

8         After surveying the medical evidence in the record

9    and other evidence, ALJ Bozarth concluded that plaintiff

10   retains the residual functional capacity, or RFC, to perform

11   sedentary work as defined in the regulations, with additional

12   physical limitations not at issue in this case, as well as

13   the following mental limitations.  The claimant is capable of

14   simple, routine, and repetitive tasks in low-stress jobs

15   which are jobs that are defined as goal-oriented and which do

16   not have an assembly line, piecework, or numerical production

17   quota pace, a job in which the individual is limited to

18   occasional decision making, occasional changes of workplace

19   setting, and occasional changes to workplace routine and a

20   job in which she has only occasional contact with

21   supervisors, coworkers, and customers.  And based upon that

22   RFC, the administrative law judge determined, after

23   concluding at step four that plaintiff did not have any past

24   relevant work of sufficient duration or earnings to be

25   considered, concluded based upon the testimony of a

1    vocational expert that plaintiff is capable of performing

2    available work in the national economy, citing as

3    representative positions document preparer, lens inserter,

4    and final assembly.

5            As the parties are well aware, the court's function

6    in this case is to determine whether correct legal principles

7    were applied and substantial evidence supports the resulting

8    determination.  As the Second Circuit noted in *Brault v.*

9    *Social Security Administration Commissioner*, 683 F.3d 443

10   from 2012, this is an extremely rigid -- Mr. Gorton, are you

11   there?

12           MR. GORTON:  I am back, yes, somehow I got cut off,

13   I don't know if everybody else got cut off, but -- so I

14   called back.

15           THE COURT:  All right.  Well, I don't know where

16   you left off but I'll continue and you'll be receiving a

17   transcript of my determination.

18           MR. GORTON:  It'll be fine, yeah.

19           THE COURT:  So in *Brault*, the Second Circuit noted

20   that this is an extremely stringent standard, substantial

21   evidence being defined as such relevant evidence as a

22   reasonable mind would find sufficient to support a

23   conclusion.  That is even more demanding than the clearly

24   erroneous standard.  Significantly, the Circuit noted that

25   once the administrative law judge finds a fact, under this

1   deferential standard, the fact can be rejected only if a

2   reasonable fact finder would have to conclude otherwise.

3        In this case, plaintiff raises several contentions,

4   the focus being on plaintiff's mental condition.  First, she

5   challenges the failure of the Appeals Council to consider

6   LCSW Kathleen Loftus' letter of April 28, 2020.  Second, she

7   asserts that it was error committed in assessing plaintiff's

8   medical records and relying on his assessment for affixing

9   the RFC.  Third, she challenges the weight assigned to

10  medical opinions issued by state agency consultant Dr. L.

11  Haus and Consultative Examiner Dr. Amanda Slowik.  Fourth,

12  she challenges the social limitation as not supported, and

13  fifth, claims that the step five determination, which the

14  Commissioner bears the burden of proof of course, is flawed

15  based upon the hypothetical that is based upon a residual

16  functional capacity finding not supported by substantial

17  evidence.

18        The relevant period in this case of course is March

19  of 2018 to November 2019, although that does not necessarily

20  mean that records outside that date are wholly irrelevant.

21        Addressing the first argument, on April 28, 2020,

22  Therapist Kathleen M. Loftus issued a letter that is in the

23  record -- Mr. Gorton, are you there?  Ms. Saad, are you

24  there?

25        MS. SAAD:  I'm here, your Honor.

1          THE COURT:  Let's wait a minute for Mr. Gorton to

2     call back.  He should pay his phone bill.

3          MR. GORTON:  I'm here, I'm here, I had it on mute,

4     I've been here.

5          THE COURT:  It just sounded like somebody signed

6     off, but we'll continue.

7          MR. GORTON:  It did, it sounded the same to me.  I

8     was assuming that this time it was maybe the defendant's

9     attorney.  But the first time, I didn't sign off by the way,

10    it just killed me, but this time I've been on, I just --

11    doggone it, I put it on mute so I don't disturb and then I

12    forget.

13         THE COURT:  Okay.

14         MR. GORTON:  But I'm here.

15         THE COURT:  Maybe the court should pay its phone

16    bill.  All right.  So addressing Therapist Loftus' opinion,

17    in that letter, she states, "As a psychotherapist, part of my

18    job is to be an agent of change, a beacon of hope for my

19    patients.  I believe we all have the ability to change and

20    heal with motivation and support.  It's just not easy."

21    Significantly she states, "In my opinion, Ms. H.'s mental

22    illness makes it impossible to participate in activities that

23    most people would say are normal, including working, at this

24    point in her treatment."

25         The Social Security Administration Appeals Council

said the following with regard to that letter, this is at
page 2 of the administrative transcript.  The letter of
Therapist Loftus, by the way, is at page 6.  "You submitted a
letter from Kathleen Loftus, LCSW-R, Family and Children's
Society, dated April 28, 2020 (1 page).  The administrative
law judge decided your case through November 5, 2019.  This
additional evidence does not relate to the period at issue.
Therefore it does not affect the decision about whether you
were disabled beginning on or before November 15, 2019."  To
be properly considered, of course, it is well accepted new
evidence must be new, obviously, material, and must relate to
the period before the ALJ's decision.  *Lesterhuis v. Colvin*,
805 F.3d 83 from the Second Circuit, 2015.

I agree with plaintiff's counsel that the mere fact
that the letter postdates the administrative law judge's
decision by some six months, the mere fact alone does not
mean that it does not qualify as new evidence that must be
considered.  *Williams v. Commissioner of Social Security*, 236
F.App'x 641 from the Second Circuit, 2007, and *Pollard v.
Halter*, 377 F.3d 183 from the Second Circuit, 2004.  But
clearly, it must reflect in some way, shape, or form that it
relates to the period at issue.  *Anna G. v. Commissioner of
Social Security*, 2021 WL 3721140, Western District of
New York, August 23, 2021.

Aside from the fact that the therapist began

1    treating the plaintiff in March of 2018, it does not on its

2    face say anything to indicate that it relates to the period

3    in question.  So I do not believe it was error or would be

4    error not to consider this letter, and even if it was, I

5    believe the error was harmless because the sentence that I

6    read, beginning with, "In my opinion," in my view, speaks to

7    a matter reserved to the Commissioner, specifically whether

8    the plaintiff is capable of working.

9           Turning to the next argument, whether the residual

10   functional capacity is supported and specifically whether the

11   medical treatment notes were properly evaluated by the

12   administrative law judge.  A claimant's RFC represents a

13   finding of the range of tasks she is capable of performing,

14   notwithstanding her impairments.  Specifically it ordinarily

15   represents a maximum ability to perform sustained work

16   activities in an ordinary setting on a regular and continuing

17   basis, meaning eight hours a day for five days a week, or an

18   equivalent schedule.  *Tankisi v. Commissioner of Social*

19   *Security*, 521 F.App'x 29 at 33, Second Circuit 2013.  Of

20   course an RFC determination is informed by consideration of

21   all of the relevant and other medical evidence, all of the

22   other evidence, and must be supported by substantial

23   evidence.

24          In this case, the residual functional capacity is

25   fairly limited.  Support for the RFC comes in the form of

1    treatment notes, although they are admittedly mixed.  The

2    plaintiff, at pages 1 through 5 of her brief, has outlined

3    what she believes to be treatment records that support her

4    position.  The defendant at pages 9 and 10 outlines many of

5    the same -- records from many of the same dates, and excerpts

6    that she believes supports her position.  The administrative

7    law judge also relied on the opinions of Dr. Haus and

8    Dr. Slowik, as well as plaintiff's activities of daily

9    living.  The crux is whether I can say that no reasonable

10   fact finder could find the RFC that the administrative law

11   judge did, based upon the evidence in the record.  The

12   evidence is equivocal.  There is something in it for both

13   sides, but I am unable to say that no reasonable fact finder

14   could have arrived at the same conclusion, based on the

15   evidence in the record.

16        The crux of this case really is in the evaluation

17   of medical opinions.  This case of course was filed after

18   March of 2017, the application that is, and therefore is

19   subject to the new revised regulations that took effect at

20   that time.  Under the new regulations, an ALJ does not defer

21   or give any specific evidentiary weight, including

22   controlling weight, to any medical opinions or prior

23   administrative medical findings, including those from a

24   claimant's medical sources, 20 C.F.R. Section 416.920c(a).

25   Instead, an ALJ must consider factors that are laid out in

1   the regulations.  Among them, paramount are supportability

2   and consistency, although the other factors must be

3   considered.  Under the regulations, the ALJ must articulate

4   how persuasive he found the medical opinion and explain how

5   he considered the supportability and consistency of the

6   opinions.  The ALJ may, but is not required to, discuss the

7   other factors.  20 C.F.R. Section 416.920c(b).

8           In this case, the focus of the arguments are upon

9   the opinions of Dr. -- first of Dr. L. Haus, a state agency

10  consultant, who rendered an opinion on April 25, 2018, it

11  appears at Exhibit 1A, pages 52 to 66 of the administrative

12  transcript, and also at 410 to 411.  In his opinion or her

13  opinion, Dr. Haus finds moderate limitations in many areas:

14  The ability to understand or remember detailed instructions,

15  the ability to carry out detailed instructions, the ability

16  to maintain attention and concentration for extended periods,

17  the ability to perform activities within a schedule, maintain

18  regular attendance and be punctual within customary

19  tolerances, the ability to work in coordination with or in

20  proximity to others without being distracted by them, the

21  ability to complete a normal workday and workweek without

22  interruptions from psychologically-based symptoms, and to

23  perform at a consistent pace without an unreasonable number

24  and length of rest periods, the ability to interact

25  appropriately with the general public, the ability to accept

1     instructions and respond appropriately to criticisms from

2     supervisors, the ability to respond appropriately to changes

3     in the work setting, the ability to travel in unfamiliar

4     places or use public transportation.  In each of the

5     subdomains listed on the worksheet, when asked to explain in

6     narrative form the adaptation capacities and/or limitations,

7     the notation is made, "See below."  In the mental RFC portion

8     of Dr. Haus' opinion, he or she recites what the medical

9     evidence shows and draws the conclusion, "Retains the mental

10    ability to complete simple work with occasional contact with

11    others.  These findings complete the medical portion of the

12    disability determination."  No explanation whatsoever as to

13    how he or she arrived at that conclusion, what the extent of

14    the limitations reflected in the worksheet was.  In my view,

15    it is woefully lacking in explanation that would permit

16    meaningful review of Dr. Haus' opinion as to whether it's

17    supported.  And so *Jeaninne C. v. Andrew M. Saul*, Docket

18    Number 19-CV-1176, civil action number, Docket Number 19, I

19    addressed a similarly deficient state agency consultant

20    opinion and ordered a remand for that reason, and I find that

21    it was error in this case because of the woeful deficiency.

22          In his decision, ALJ Bozarth found at page 20 that

23    Dr. Haus' opinion was significantly persuasive based on the

24    following:  "The source has program knowledge.  The doctor

25    provided a detailed supporting rationale," which he did not.

1  "And 3, this opinion is generally consistent with the

2  contemporaneous treatment notes, the claimant's reported

3  activities of daily living and her mental health treatment

4  course."

5          I do not find that that is a sufficient explanation

6  of the issue of either consistency or supportability.  And I

7  note when relying on activities of daily living, the

8  plaintiff has fairly limited activities of daily living as

9  she reported to both Dr. Slowik and Dr. Jenouri and in my

10  view, what she is capable of doing in terms of activities of

11  daily living do not translate well into the ability to work

12  on a sustained basis in competitive employment and the ALJ

13  did not tell me otherwise as to how that bridge is gapped, or

14  that gap is bridged I guess is the correct term.  She doesn't

15  take public transportation because of her anxiety, she

16  doesn't shop because of her anxiety, anxiety limits her from

17  leaving her house.  She does care for her son and drop him

18  off at a nearby bus stop and pick him up, but in my view,

19  those don't necessarily translate well into competitive

20  employment capability.  But the bottom line is, I don't

21  believe that the administrative law judge's analysis of

22  Dr. Haus permits meaningful judicial review.  *Raymond M. v.*

23  *Commissioner of Social Security*, 2021 WL 706645 from the

24  Northern District of New York, it is February 22, 2021.

25  The -- in my view that error alone would warrant remand.

1            The second opinion at issue comes from Dr. Amanda

2    Slowik, it appears at pages 405 through 409, it was issued on

3    April 18, 2018.  In her medical source statement, Dr. Slowik

4    finds, among other things, that claimant is limited in her

5    ability to interact adequately with supervisors, coworkers,

6    and the public to an extent that is described as moderately

7    to markedly.  She also finds that the claimant is markedly

8    limited in her ability to sustain an ordinary routine and

9    regulate emotions, and concludes that these difficulties are

10   caused by distractibility, anxiety, and depression.  In his

11   decision, ALJ Bozarth concluded that Dr. Slowik's opinion was

12   partially persuasive, finding that she has program knowledge,

13   was able to examine the claimant, but she -- he concluded

14   that the degree of severity assessed by this opinion is

15   greater than supported by claimant's activities of daily

16   living, I've already addressed that, and contemporaneous

17   treatment notes.

18           In my view, it's not sufficient, sufficiently

19   adequate to simply say it's in contemporaneous treatment

20   notes without further specificity.  In my view, again,

21   Dr. Slowik, the administrative law judge's consideration of

22   Dr. Slowik's opinion is woefully deficient and does not

23   properly address supportability and consistency to an extent

24   that would permit meaningful review.  I don't agree that the

25   opinion is vague, and I reject the Commissioner's argument

1    that was made in the brief but not pressed at -- acknowledge

2    that it was not pressed during argument, that Dr. Slowik's

3    opinion is not a medical opinion under the regulations that

4    are subject to the requirement of addressing supportability

5    and consistency.  I've already said how I don't believe the

6    activities of daily living reflected, including in Dr. Slowik

7    and Dr. Jenouri's reports, show that plaintiff can work five

8    days a week eight hours a day.  *Pamela P. v. Saul*, 2020 WL

9    2561106 from the Northern District of New York signed May 20,

10   2020, by my colleague Magistrate Judge Daniel J. Stewart, and

11   *Coyle v. Commissioner of Social Security*, 2018 WL 3559073

12   from the Northern District of New York, 2018, my colleague

13   Administrative Law Judge William Mitchell.

14          So I find error in the reliance on the activities

15   of daily living without specifying the relationship between

16   the ADLs relied on and plaintiff's ability to meet the mental

17   demands of competitive employment.  I don't believe that the

18   ALJ's analysis of Dr. Slowik's opinion permits meaningful

19   judicial review.  I find that the error is harmful because

20   Dr. Slowik's opinion is inconsistent with the RFC when it

21   comes to plaintiff's ability to maintain a schedule and stay

22   on task, and so I believe the matter should be remanded for

23   further consideration of the evidence.  I do not find

24   persuasive proof of disability and therefore will order that

25   the Commissioner's determination be vacated and the matter be

1    remanded for further consideration.

2              Thank you both for excellent presentations, I hope

3    you have a good afternoon and the rest of your summer.

4              MR. GORTON:  Thank you, your Honor.

5              MS. SAAD:  Thank you, your Honor.

6                   (Proceedings Adjourned, 2:58 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                  CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5     Official Realtime Court Reporter, in and for the

6     United States District Court for the Northern

7     District of New York, DO HEREBY CERTIFY that

8     pursuant to Section 753, Title 28, United States

9     Code, that the foregoing is a true and correct

10    transcript of the stenographically reported

11    proceedings held in the above-entitled matter and

12    that the transcript page format is in conformance

13    with the regulations of the Judicial Conference of

14    the United States.

15

16                    Dated this 15th day of July, 2022.

17

18

19                    /S/ JODI L. HIBBARD
                      _____

20                    JODI L. HIBBARD, RPR, CRR, CSR
                      Official U.S. Court Reporter
21

22

23

24

25